IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Signify Holding B.V., <br><br> *Plaintiff*, <br><br> v. <br><br> Keystone Technologies, LLC, <br><br> *Defendant*. | Civil Action No.: 2:24-cv-06761-CFK <br><br> **JURY TRIAL DEMANDED** |

**SIGNIFY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
PROTECTIVE ORDER GOVERNING CONFIDENTIAL INFORMATION**

Pursuant to Local Rule 7.1(c), Plaintiff Signify Holding B.V. ("Signify") hereby submits this memorandum of law in support of its Motion for Protective Order Governing Confidential Information.[1]

This is a patent infringement case and discovery will involve some confidential documents and information, such as internal financial and technical documents. A well-structured protective order will be necessary to protect this information while still permitting the parties' in-house counsel to meaningfully represent their clients. Signify and Defendant Keystone Technologies, LLC ("Keystone") have exchanged proposals and largely agree on the provisions of the protective order that should govern confidential information produced in this litigation. But, despite many months of active negotiation, the parties are at an impasse, and Signify therefore raises this matter with the Court.

---

[1] Pursuant to Local Rule 7.1(f), Signify respectfully requests oral argument on its Motion should the Court believe it to be helpful.

Specifically, the parties fundamentally disagree whether a so-called "patent prosecution bar" should be included in the protective order. In general, patent prosecution bars (often shortened to "prosecution bars" or just "bars") are provisions sometimes added to protective orders to prevent lawyers who, through litigation, gain access to certain types of highly confidential technical information, typically source code, from then using that information to amend or draft new patent claims that could read on a competitor's products. *See In re Deutsche Bank Tr. Co. Ams.,* 605 F.3d 1373, 1379-81 (Fed. Cir. 2010).

Signify does not believe a prosecution bar is warranted in this case given the lack of potential harm and the prejudice to the individuals involved and the fact that Keystone will likely not be producing source code. As explained below, the Court should enter in an order that lacks such a prosecution bar. But should the Court believe a prosecution bar is necessary, Signify proposes, as a pure compromise, the language below, which strikes the appropriate balance between protecting technical information about Keystone's unreleased, future products, while at the same time allowing Signify's in-house counsel to view sufficient information to adequately represent Signify in this litigation:

> any individual who substantively reviews information designated as "OUTSIDE ATTORNEYS' EYES ONLY" that also relates to technical information about future products not commercially released (a "Patent Prosecution Restricted Person") shall not prepare . . . or assist in the preparation or prosecution of any patent claim in any patent-in-suit or any continuation, continuation-in-part, divisional, or parent application of any patent-in-suit on behalf of the receiving Party . . . during the pendency of the present matter and for a period of one (1) year after dismissal or entry of final judgment

Signify's Proposed Protective Order ("PO" or "Proposed Order") at 24.[2]

---

[2] Signify's Proposed Protective Order is attached to its Motion as Exhibit A.

Keystone, however, seeks a significantly more restrictive prosecution bar. Specifically, Keystone seeks a bar that bans individuals who view confidential technical information from participating in both the prosecution *and the acquisition* of patents pertaining to "the field of invention of any patent-in-suit" (i.e., the *entire field of LED lighting*—Signify's entire business). Specifically, Keystone proposes:

> Absent written consent from the Producing Party, any individual who substantively reviews information designated "HIGHLY CONFIDENTIAL" (a "Patent Prosecution Restricted Person") shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent claim or patent application, ***nor participate in the acquisition*** of any patents or pending applications, ***pertaining to the field of the invention of any patent-in-suit*** on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of the present matter and ***for a period of two (2) years after dismissal or entry of final judgment not subject to further appeal***.

Declaration of Ravi Shah ("Shah Decl."), Ex. 1 (Keystone's proposed protective order) at 25 (emphasis added).[3]

Keystone's proposal has four key differences that render it overly restrictive. <u>First</u>, there is an overarching problem with Keystone's assertion that the prosecution bar should apply to technical documents related to Keystone's current products on the market (as opposed to future, unreleased products). The scope of a prosecution bar must "reasonably reflect the risk presented by the disclosure of ***proprietary competitive information***." *Deutsche Bank*, 605 F.3d at 1381 (emphasis added). Here, with respect to Keystone's products ***currently on the market***, there is no risk of disclosure of proprietary confidential information. Signify's in-house counsel can purchase a current Keystone product, perform a detailed technical inspection of it, and permissibly draft patent claims based on that analysis of public information. However, under Keystone's proposal, that same in-house counsel could not draft claims after reviewing identical information in a

---

[3] The Shah Decl. and associated Exhibit are filed concurrently with this Memorandum.

document, simply because they viewed a document Keystone labeled "HIGHLY CONFIDENTIAL."[4]

Second, Keystone's proposal prohibits Signify's in-house counsel from being involved in the acquisition of third-party patents. Keystone posits that without its proposed bar on in-house counsel being involved in acquisition activities, Signify's in-house counsel would use Keystone's technical confidential information to purchase third-party patents and then turn around and assert those newly acquired patents against Keystone products. Keystone provides no basis for its speculation that this would occur, and such speculation cannot support the broad bar Keystone seeks.[5]

Third, Keystone's proposal unnecessarily prevents Signify's in-house counsel from involvement in the prosecution (or acquisition) of patents related to an incredibly broad subject matter—namely, patents "pertaining to the field of the invention of any patent-in-suit." Keystone will undoubtedly read this language to mean anything in the field of LED lighting, which is Signify's entire business. But this incredibly broad proposal has little, if any, relationship to the speculative harm sought to be avoided and unreasonably limits the ability of Signify's in-house attorneys to carry out their routine prosecution activities and represent the company in this litigation. *See Realtime Adaptive Streaming LLC v. Google LLC*, No. CV 18-3629-GW(JCx), 2019

---

[4] Under Keystone's proposal, "Highly Confidential" material is subject to its prosecution bar, and includes, but is not limited to, "CONFIDENTIAL INFORMATION relating to current or future products not yet commercially released, technical information, strategic plans, marketing information, financial information such as sales amounts and volume, consumer account or transaction information." Shah Decl., Ex. 1 at 3, 25.

[5] For example, Keystone's allegation assumes not only that Keystone is infringing patents currently owned by unnamed third parties, but also that Signify is seeking out those additional patents from third parties who would then be willing to sell those patents to Signify, who would be willing to purchase them. There is no factual support for Keystone's speculation, let alone basis in the law to impose such a prophylactic measure in the protective order—especially since all nine patents involved in the current matter involve in-house Signify inventions.

U.S. Dist. LEXIS 240783, at *14 (C.D. Cal. May 6, 2019) (stating entry of a prosecution bar "requires the party requesting the provision to make a *showing of specific* prejudice or harm") (emphasis in original).

Finally, Keystone proposes that the prosecution bar should extend for two years after the conclusion of this case. But Courts that include prosecution bars routinely limit them to a single year. Especially given the lack of source code or other highly sensitive technical information that Keystone will be producing, if the Court determines that a prosecution bar is necessary, it should be limited to a single year after this case ends.

Accordingly, the court should issue a protective order without a prosecution bar, or at most, should include the more narrowly tailored bar Signify proposes.

## I. BACKGROUND

The Parties' negotiations regarding the protective order governing confidential information started over three months ago when this case was still pending in the Northern District of Georgia. On November 5, 2024, Signify sent a proposal to Keystone. Shah Decl., ¶ 5. Despite repeated follow-up emails from Signify seeking updates on the status of the protective order, Keystone took over a month to finally provide responsive edits on December 6, 2024. *Id.* The Parties met and conferred on December 18, 2024, but were unable to resolve their differences. *Id.,* ¶ 6. Signify followed up with Keystone on January 2, January 6, January 17, and again on January 20, 2025 to move the dispute forward and provide compromise proposals, but Keystone was largely unresponsive until February 2, 2025 when Keystone again reiterated that it remained in disagreement with Signify on the scope of the prosecution bar. *Id.*, ¶¶ 6-10.[6]

---

[6] In its February 2 email, Keystone stated that it remains open to further discussions. However, in view of the prior delays and lack of a counterproposal from Keystone, Signify believes that the dispute is ripe for the Court to decide.

## II.   LEGAL STANDARDS

### A.   The Court's OGP and the Federal Rules.

The Court's Order Governing Proceedings for patent cases ("OGP") contains an interim protective order, stating that the disclosure of any document produced as "confidential" will be limited to each party's outside counsel. OGP at 3. The OGP specifically mentions that the interim protective order is only in place until the Court enters a "final Protective Order." *Id.*

### B.   Prosecution Bars in Protective Orders Must be Necessary and Narrowly Tailored

"[T]he determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law." *Deutsche Bank*, 605 F.3d at 1378. The party seeking the inclusion of a prosecution bar has the burden of showing good cause for such a provision. *Id.* "[T]he first inquiry under *Deutsche Bank* is whether each putative subject of the requested prosecution bar is involved in competitive decision making with its client." *Champion Power Equip. Inc. v. Firman Power Equip. Inc.,* No. CV-23-02371-PHX-DWL, 2024 U.S. Dist. LEXIS 189688, at *10 (D. Ariz. Oct. 18, 2024) (internal quotations omitted).

However, "[a] determination of the risk of inadvertent disclosure or competitive use does not end the inquiry." *Deutsche Bank*, 605 F.3d at 1380. Instead, "[i]n evaluating whether to grant a patent prosecution bar in the first instance, a court must be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the PTO." *Id.* at 1381. Thus, "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id*.

### III.    ARGUMENT

#### A.    Good Cause Exists to Enter Signify's Proposed Order.

This Court has issued an order stating that discovery is open and directing the Parties to engage in the discovery process. Dkt. no. 55 at 1.[7] The Court, through its OGP, further instructs the Parties that its interim protective order is to remain in place until the Court enters a final protective order. OGP at 3. Good cause exists for the entry of Signify's Proposed Order governing the confidentiality of discovery in this case because this Order is narrowly tailored to protect confidential information from disclosure that could cause competitive harm. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019). Thus, the provisions of the Proposed Order will facilitate fulsome discovery in this litigation. The Proposed Order also explicitly notes that its adoption does not allow a party to file confidential information under seal without following the Court's rules to seal documents. The Proposed Order will therefore not result in the public losing access to material that it would otherwise have been entitled to review. As required by the Court, the Order also states that "the Court reserves its inherent power to modify the terms of this agreement and permit the disclosure of information where the interest of justice so requires." PO at 28.

Signify's Proposed Order narrowly modifies the interim protective order, which states that access to any document marked "confidential" is limited to outside counsel only, by creating three different confidentiality tiers: "confidential," "highly confidential" and "outside attorney's eyes only." PO at 2-3.

- CONFIDENTIAL INFORMATION means any document or thing, as defined by Rule 34 of the Federal Rules of Civil Procedure (hereinafter collectively referred to as "Documents"),

---

[7] Additionally, the Court's OGP separately requires Keystone to produce "technical documents, . . . sufficient to show the operation of the accused product(s)." OGP at 2. Because Keystone is asserting that these documents are highly confidential, Signify will be unable to show them to Signify in-house counsel responsible for working on this matter or to Signify's technical experts until the entry of a final protective order that allows for broader disclosure of certain materials. This inability impedes presentation of contentions in this case.

and any other information considered in good faith by any Party or third party producing or disclosing such Documents or information (the "Producing Party") to be confidential because it contains or constitutes a trade secret or other information considered by such Producing Party to be confidential, including, but not limited to, (i) Documents or information the Producing Party would not normally reveal to third parties except in confidence, (ii) is commercially sensitive, or (iii) is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy, unless and until such time as such information is found not to be confidential pursuant to the provisions of this Joint Protective Order ("Protective Order").

- HIGHLY CONFIDENTIAL INFORMATION means any CONFIDENTIAL INFORMATION that the Producing Party believes in good faith constitutes proprietary financial or technical data or commercially sensitive competitive information, including, but not limited to, (i) CONFIDENTIAL INFORMATION obtained from a third party pursuant to a current Nondisclosure Agreement ("NDA"), (ii) CONFIDENTIAL INFORMATION relating to current products, technical information, strategic plans, marketing information, financial information such as sales amounts and volume, consumer account or transaction information, and (iii) any other information the disclosure of which is likely to cause harm to the competitive position of the producing party.

- OUTSIDE ATTORNEYS' EYES ONLY INFORMATION means any CONFIDENTIAL INFORMATION that includes, or relates to, patent license agreements having confidentiality obligations or relates to technical information about future products not yet commercially released.

*Id.*

In this way, Signify's Proposed Order ensures that only the most sensitive documents are limited to outside counsel, such as patent license agreements having third-party confidentiality provisions and information about future products not yet commercially released. PO at 3. Other information will be reviewable by certain designated employees (e.g., in-house counsel working on this matter), helping to facilitate the Parties' understanding and decision-making in this case. Such provisions are necessary because Keystone has refused to allow outside counsel for Signify to show any discovery marked "highly confidential" to Signify employees, including Signify in-house counsel.

One example of how Signify's Proposed Order will enhance the Parties' decision-making capabilities is by separating technical documents (e.g., circuit diagrams illustrating electrical

components in the accused products) related to current products from those related to future products not yet commercially released. The former category can be shown to in-house counsel, allowing in-house counsel to understand the contentions between the Parties and make informed decisions based upon this information. At the same time, Signify's Proposed Order accounts for the additional sensitivities surrounding technical documents related to products not yet released, limiting their disclosure to outside counsel.

Signify's Proposed Order contains a proposed prosecution bar (see PO at 24-25) as a compromise measure should the Court desire to implement a prosecution bar. Again, Signify does not believe a prosecution bar is needed, but in the interest of compromise and expediency, Signify's proposed bar is certainly the more appropriate one as compared to Keystone's. This is discussed below.

### B.   The Court Should Not Enter Keystone's Proposed Prosecution Bar.

The core of the dispute is whether the Court should include a prosecution bar, and if it determines a prosecution bar is necessary, whether Signify's proposed bar, offered as compromise, is sufficient or whether Keystone has demonstrated good cause and specific prejudice and harm for its wide-ranging bar. The law and facts compel that the Court should omit a prosecution bar (or at most) adopt Signify's proposal because Keystone does not have good cause for a bar (1) that prohibits Signify's in-house counsel from prosecuting patents simply because it has viewed documents containing the same information available from a detailed inspection of Keystone's current products (2) that bans Signify in-house counsel from assisting in any acquisition of patents related to its business (3) that prohibits prosecution and acquisition activities in "the field of the invention of any patent-in-suit" or (4) that runs for two years after this case ends.

### 1. The Technical Information Keystone Will Produce For Its Current Products Does Not Warrant a Burdensome Prosecution Bar.

A prosecution bar is unnecessary for current products, and the wide-ranging provisions of Keystone's proposal punish Signify's in-house counsel for viewing information that is knowable from the products themselves. While requiring additional expense, an interested party, including Signify, could examine the circuits related to Keystone's products without Keystone's permission, *e.g.*, by opening up the products and performing a detailed inspection of each of the circuits. Indeed, this is how Signify created its averments in its Complaint and initial infringement contentions in this case. This undermines any allegation that the technical documents in this case are of a highly sensitive nature, foreclosing Keystone's ability to show the required good cause to bar Signify in-house counsel from engaging in patent prosecution or acquisition activities. *See Realtime Adaptive Streaming LLC v. Google LLC*, No. CV 18-3629-GW(JCx), 2019 U.S. Dist. LEXIS 240783, at *14 (C.D. Cal. May 6, 2019) ('[I]n this case, demonstrating good cause requires Google Defendants to show specific prejudice or harm if no acquisition bar is entered. This showing, in turn, requires consideration of how sensitive the information at issue actually is."). The lower sensitivity of technical documents in this case distinguishes it from others in which the parties were exchanging highly sensitive documents, such as source code.[8]

In other words, Keystone is attempting to broadly prohibit future behavior by Signify's in-house counsel based on their review of information they could already access without Keystone documents and already have accessed with regard to the Keystone SKUs previously purchased by

---

[8] The Federal Circuit has also made clear that the decision to order a prosecution bar is highly dependent on types of information sought to be included. *See e.g., Deutsche Bank*, 605 F.3d at 1380 (holding that "financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar.").

Signify. This is improper from both a common sense and legal perspective. For example, a U.S. International Trade Commission opinion squarely discussed the issue, declining to apply a prosecution bar and stating:

> Apple apparently intends to trigger the bar when producing information about technology that has *already* been developed, sold, or disclosed in patents. For example, Apple claims its discovery responses reveal technology relating to its iPhone, iPad, and iPod touch products. These are products that are already in wide use and thus susceptible to reverse engineering. Technical information about products in public use does not raise the same risk of misuse in patent prosecution as might be raised by technology that has not yet been sold or included in a patent application.

*In the Matter of Certain Elec. Devices with Image Processing Systems, Components Thereof, and Associated Software,* Inv. No. 337-TA-724, USITC Order No. 12, 2010 ITC LEXIS 2698 at *11-12 (U.S. Int'l Trade Comm'n Dec. 3, 2010) (emphasis in original); *see also Champion Power Equip*, 2024 U.S. Dist. LEXIS 189688, at *22 (stating that hardware schematics of currently available products do not "raise the same level of heightened concern as schematics related to unreleased products and inventions that are not yet the subject of patent applications"). Ultimately, any information that triggers a prosecution bar "must be truly confidential and not able to be ascertained through reverse engineering or other means." *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 U.S. Dist. LEXIS 72217, at *8 (N.D. Cal. May 23, 2016). The information Keystone seeks to include in its proposed prosecution bar fails this test.

### 2. Keystone's Acquisition Bar is Unwarranted.

Further, vague allegations of harm such as those provided by Keystone cannot support the acquisition bar it seeks. For example, the one court found that "InfoBionic's contention that CardioNet's counsel should not gain the benefit of understanding sensitive technical information of any kind and then be able to turn around and craft claim amendments or new claims for

CardioNet is an unsubstantiated assertion of generalized potential harm that fails to demonstrate a need for this restriction." *CardioNet, LLC v. InfoBionic*, Inc., Civil Action No. 1:15-cv-11803-IT, 2015 U.S. Dist. LEXIS 197752, at *9 (D. Mass. Dec. 23, 2015) (internal quotations omitted). The court in *CardioNet* further stated, "[s]imilarly, the prosecution bar adopted by the court omits InfoBionic's proposed prohibition on covered persons from being involved in patent acquisition as InfoBionic again fails to demonstrate a particular need for such a bar. This is especially so because CardioNet is not primarily in the business of acquiring and asserting patent rights." *Id.*[9]

### 3. Keystone's Proposed Order is Disproportionally Broad.

Keystone's proposed order has broad proscriptions that bear very little relation to the harm in question.[10] Signify's Proposed Order provides a concrete definition of prohibited activities, stating that restricted individuals "shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent claim in any patent-in-suit . . . ." PO at 24. Signify's Proposed Order therefore provides clear notice to the Parties regarding the scope of the prosecution bar (i.e., restricted individuals cannot draft claims of the patents-in-suit or related patents or applications). This provision ensures that the Parties do not use certain confidential information to draft new patent claims and can be easily understood and followed.

---

[9] It is unclear whether Keystone's assertion is that individuals who review information triggering the prosecution bar should be generally barred from the acquisition of any patents / patent applications or if these individuals would only be barred from asserting any acquired patents against Keystone. While Keystone cannot demonstrate good cause for either version of its acquisition bar, the former version is facially overbroad, and Keystone cannot show the specific prejudice or harm to justify this provision. *Realtime Adaptive Streaming*, 2019 U.S. Dist. LEXIS 240783, at *14 ("demonstrating good cause requires [Defendants] to show specific prejudice or harm").

[10] For example, Keystone's proposed prosecution bar wholly bans Signify in-house counsel from participating in the acquisition of any patents, irrespective of whether Keystone even makes products that would be covered by the patents.

In contrast, Keystone's proposal seeks to have a prosecution bar that bans activities, such as prosecution and acquiring patents, pertaining to "the field of the invention of any patent-in-suit." Keystone may argue that this bars prosecution in the field of LED light devices, which is Signify's entire business, and covers many inventions that are outside the scope of the patents in the case. This is yet another reason that the Court should adopt Signify's proposal. It is adequately tailored to the goal of a prosecution bar (i.e., stopping certain confidential information from being improperly used to prosecute future patents related to the patents in this case) and clearly delineates forbidden activities.

### 4. The Duration of Keystone's Proposed Prosecution Bar is Inappropriate.

Finally, Signify proposes that the prosecution bar last for one year. As mentioned above, this case does not involve highly sensitive source code or similar documents. Thus, a lower level and duration of protection is appropriate. A one-year prosecution bar is also in accordance with the timeframe courts routinely find appropriate. *Ultra Premium Servs., LLC v. OFS Int'l, LLC*, No. 4:19-CV-2277, 2019 U.S. Dist. LEXIS 194051, at *16-17 (S.D. Tex. Nov. 7, 2019) ("The Court agrees with Plaintiff that a prosecution bar that lasts 18 months from the conclusion of appeals is onerous. The Court finds that a bar of one year from the date of judgment in the District Court is within the range generally approved by courts as reasonable and is sufficient to protect Defendants' interests.").[11]

\*    \*    \*

---

[11] To the extent that Keystone argues for a longer duration, it bears the burden of showing good cause. *CardioNet*, 2015 U.S. Dist. LEXIS 197752, at *5 ("[T]he party seeking the more restrictive provision, bears the burden of establishing good cause for th[e] restriction.")

Ultimately, if the Court is going to order a prosecution bar, Signify's proposed prosecution bar properly balances the Parties' competing interests. The bar, combined with Signify's confidentiality designations, ensures that Parties can access most of the information relevant to the claims and defenses in this litigation, while also acknowledging certain narrow categories that should be limited to outside counsel only. Further, given the types of technical information involved in this case, Signify's prosecution bar adequately prevents the Parties from using certain confidential information to draft or alter patents / patent applications, without being unduly burdensome and prejudicial to the Parties.

## IV. CONCLUSION

For the foregoing reasons, Signify respectfully requests that the Court enter Signify's Proposed Order governing confidential information, attached as Exhibit A to its Motion, with or without the prosecution bar found in pages 24-25 of the Proposed Order.

Dated: February 7, 2025

/s/ *John S. Stapleton*
John S. Stapleton (PA ID 200872)
jstapleton@stapletonsegal.com
Eli Segal (PA ID 205845)
esegal@stapletonsegal.com
**STAPLETON SEGAL COCHRAN LLC**
1760 Market Street, Suite 403
Philadelphia, PA 19103
Telephone: (215) 561-1500

Adam Swain (*pro hac vice*)
adam.swain@alston.com
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

Christopher McArdle (*pro hac vice*)

Christopher.McArdle@alston.com
Ravi Shah (*pro hac vice*)
Ravi.shah@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400

Joshua Weeks (*pro hac vice*)
Joshua.Weeks@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000

*Attorneys for Plaintiff*
*Signify Holding B.V.*

## **CERTIFICATE OF SERVICE**

    I certify that I caused the foregoing document to be electronically filed on February 7, 2025, with the Clerk using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

                                          */s/ John S. Stapleton*
                                          John S. Stapleton